I don't understand what the hell these people are saying in this case. That race was just so jumbled. Yeah. We don't seem to even know where the taxpayer's assistance is. Okay, Ms. Breedlove, you may proceed. Good morning, Your Honors. I'm Pamela Breedlove, and I'm here on behalf of the appellants, who are all members of the Shreveport Police Department. Regarding the oppressive sick leave policy that was adopted by the Shreveport Police Department and the City of Shreveport, that affects just them, no other members of the City of Shreveport, no other civil service members, no other safety members, just them. And the policy impacts multiple areas, the one being the improper inquiries and disclosure of medical information, improper confinement, improper search in their homes to make sure they're really there without any just cause for doing so, loss of benefits, as well as the same kind of privacy rights under the state constitution and state law. The first issue that I'd like to address with the Court is the improper medical inquiries and disclosures under the Rehabilitation Act. There is no doubt the Rehabilitation Act applies in this case. The petition alleged that the City of Shreveport received federal funds, and in fact alleged that the Shreveport Police Department was receiving federal funds. So even under the old case of Brown, that would get you under the Rehab Act, but because the city itself was receiving funds, the Rehabilitation Act applies. The Rehabilitation Act does not require an exhaustion of remedies for employees if they're non-federal employees. Have you essentially abandoned any argument that you may have made that Title II of the ADA applies to this situation? No, Your Honor. I believe the Eleventh Circuit was actually correct when they came down and said that also. I haven't abandoned Title I because we do have to exhaust remedies under that statute, but under Title II we are not required to. And although I understand the Eleventh Circuit opinion may be the minority, I believe it was correct because it was applying the regulations which the statute instructed the Department of Justice to draft. And so I think the standards are the same. But under the Rehabilitation Act, in the statute itself, it incorporates the prohibitions against inquiries and disclosure from Title I. In the statute of the Rehab Act, it incorporates that. So statutorily, the Rehabilitation Act prohibits improper medical inquiries and improper medical disclosures. But it certainly wouldn't prohibit the employer asking the officer what's wrong with him, the reason, the medical reason for his absence, would it? If it's just a general, were you sick, but to get into the specifics as in what they are required to do, if they miss a one-eight-hour shift, they have to sign a release granting the City of Shreveport, actually the Shreveport Police Department, access to any and all medical records and hospital records regardless of what it's for. So that is oppressive, Your Honor. And that's every time you're absent. First time you're absent, you have to sign a piece of paper saying, here's City of Shreveport. I know I was sick with a cold last night or I had a broken arm and I was in the hospital, but now you can go research every medical record I've ever had. And that's what the policy requires. It also requires after the third time in one year, not three consecutive absences, but you get sick in January, you get sick in March, you get sick again in September, and you have to have your doctor fill out the rest of that SPD form. So what law does that violate? Well, that is still, again, improper inquiry under the Rehabilitation Act and the ADA Title II because that act, I mean that form specifically asks the doctor if his officers are disabled, asking them if this is a chronic condition. When you're talking about three absences in an entire year, not three in a row, they could be four or five months apart. Now all of a sudden the City of Shreveport has a right to ask if you're disabled? That's the whole point of the prohibition against medical inquiries contained within the Rehabilitation Act. Would it be okay to ask for medical records supporting the fact that you're sick today? If you're asking me to give you a doctor's note, that would be fine, but the policy says a doctor's note saying you were sick and they sign it is not good enough. It actually says a doctor's note on a prescription pad, which everybody else within the City of Shreveport can do, is not good enough for a Shreveport police officer. Couldn't the employer go in the weeds a little bit more than that and say, if he gets sick by the doctor, he'd send it back and say, give me a little more detail, what's his problem? Why is he not able to work today? You can get as general information, Your Honor, but you can't get into the specifics that are being requested by the City of Shreveport, which is, is this a chronic condition? Because the third time this year you were sick, even though three different things, and it's not limited to just sickness. You could have two duty injuries. You could get hurt on the job in January, miss a day of work, get hurt on the job in February, miss a day of work, and six months later. If you're running a city police department where the officers, you have a limited force that you can't just go hire somebody off the street. You shouldn't. Why is it perfectly reasonable to know if somebody comes in sick that this is a chronic condition, or we're going to have a problem here, et cetera? I mean, I can see what's wrong with that. Your Honor, what's wrong with it is if you're talking about somebody who is missing multiple days, to ask them, if you're talking about somebody who's missed three days, five days, two weeks, that would be one thing. Well, it sounds like something you ought to negotiate with the employer, but what I'm having trouble with is that all these allegations and claims that these police officers are unfairly treated because they have to do more than maybe some other employer requires. I'm having trouble finding any illegality in any of these things, and you don't tie it to anything that makes sense. You claim so many things are substantive due process violations. That's utter nonsense. We're tying it to your rights under the Rehabilitation Act that you have, and also the Louisiana state constitution, which the Louisiana court. Your whole theory rests upon, in this line of cases, rests upon the inquiry leads to the question, are you a disabled person under the Disability Act, under the American Disability Act? And that is a question you cannot ask. And that is what they are asking. If you ask these questions in such a probing way that it threatens the privacy of the disability that you may have, then that is prohibited by both the ADA and the Rehabilitation Act. That's what you're saying. That's correct, Your Honor, and that's exactly what they're doing. But if the inquiry does not reveal a disability, or is not likely to reveal a disability, then the inquiry is perfectly okay. But the problem is the form itself doesn't really. It requires the doctor to give a diagnosis, and it straight up asks the doctor if this officer is disabled. You can't get more directly inquiring into whether or not somebody is disabled if you're asking the doctor if this person is totally disabled. That is the improper inquiry. And it's being done not because somebody's... I agree, Your Honor, if somebody's been out two weeks or six months, yes, the city needs to be able to do and look into that. But we're talking about the general... If you're absent the third day of the year, not in a row, then you have to let us ask your doctor if you're disabled. Okay, now, your argument applies only to two aspects of the city's policy, correct? That argument, yes, Your Honor, that relies to the inquiry part of it, yes, sir. All right, and then how many other aspects of the city policy are you challenging? We're also challenging the improper confinement of officers to their homes. And what else? We are also improperly going to the officers' homes to search to see if they're there. What else? There are loss of benefits because if they go out on extended sick leave, because they're on sick leave... And what else? The Louisiana Privacy Rights Act and the... That's it. That is correct, Your Honor. That's it. And your argument is with respect to all of them except the inquiries that are made with respect to the first two policies are covered by some other theory of law that you're claiming is illegal? The inquiries and the disclosures, because there's two parts of the inquiries, because in addition to the inquiries, they're disclosing information improperly. But those arise out of the Rehabilitation Act and Title II of the ADA. Where is the legal premise of your other claims? The legal premise of my other claims is that we... The Constitution? The Constitution, that's correct. And not the ADA or the Rehabilitation Act? That's correct. It is the state and federal Constitution as well as the Louisiana Civil Service Rights. Because what we have here is that the city of Shreveport has a police department and a fire department. They're both members of the same exact civil service board, subject to the same exact civil service statutory law, and their ultimate person who hires them is the same exact person, the mayor of the city of Shreveport. So you can't get... And both groups get the exact same amount of sick leave, which is the purported reason that they want to make police officers stay home for 72 hours if they miss an 8-hour shift. They're not doing that to firefighters. I understand, Ms. Bridgeworth. I think we have your argument. Do you have anything related? Thank you very much. And you've certainly saved some time for rebuttal, and anything that Mr. Byrd says you can address in rebuttal. Thank you. Yes, indeed. Thank you. Mr. Byrd? Thank you. With respect to the... I think you've helped narrow the issues just like the district judge was trying to do and have a little more clarity for us that we're really looking at the substantive due process issues that address most of the claims and then what started out as an ADA claim and that evolved into this Rehab Act claim relative to the inquiry provision in the policy that's described in the form. Now, what we need to do is kind of focus on what they're really asking. We've heard some kind of exaggerated descriptions of the inquiry, and essentially what the document provides is, and it's the SPD form policy. I mean, there's no question, but those are very broad searching questions about one's health and could easily exhibit to the city police department a disability within the ADA or the Rehab Act. And what I'm interested in, because we're not dealing with the ADA because they failed to exhaust the administrative remedies. We're dealing with the Rehab Act, and the Rehab Act has the words solely by reason of the disability, which does not appear in the ADA, but that seems to have a greater restriction on the rights of privacy  Explain that to me. Judge, you're correct. And that's why most of these cases, they're not going to the Rehab Act for these medical inquiry cases because you can't say, oh, the sole reason that the Cerebral Police Department wants to know this is based on the disability. That's not a plausible claim. That was our contention below, to say that that's the causation element in the Rehab Act that's absent from the ADA. And to quote it specifically, it must be, quote, solely by reason of her or his disability. That's why such a claim under the Rehab Act is not even plausible. Doesn't an employee, though, have the right to privacy of his medical records as long as, at least to the extent that it might show a disability? I mean, the thing that concerns me about it is apparently the department wants to get all of the officer's records, all of his medical records, even though they may have absolutely nothing to do with why he's not there today or the last three absences. And why wouldn't that allow the employer to determine whether he has a disability? And if it does, isn't the employee entitled to privacy there? Judge, that's not the description that was provided is not the policy. They don't waive a policy. Well, is that what the form says? Well, you have to look carefully at the form, Judge, and it says it's all referencing, quote, in connection with my absence from work. That's all that they're disclosing, and that's in the part that the officer signs. It says all necessary information. That's what it's referencing. It doesn't say just because you're absent, then we can go get any record you ever had about your health. Of course not. It says in connection with my absence from work. That's the quote. I acknowledge that's my responsibility to furnish the department any and all information, facts, and particulars requested in connection with my absence from work. And that's at the record excerpt, Exhibit 1, at the last page. That's at the record at .63. It's specious to suggest that that means that a police department can go get anything about that officer. That's not correct at all. The inquiry that's here is, and the officer can get a physician to write a letter that specifies this. The reason for the absence, the diagnosis, are they able to perform the functions of the job? Those are the things that the EOC. It seems to me that it's written in such broad terms that the interpretation that the plaintiff has given to this might be plausible as well as the argument that you're making. Well, that may be why the Rehab Act issue is so important because how could you suggest that that request for the reason, the diagnosis, can you perform your job, is it intermittent or not? And those are the four things that we're talking about. That's what the physician is being asked to provide. How can we suggest that that is... What if someone had AIDS, for example, and so you send this inquiry to the doctor, what is the reason, what is the flare-up of AIDS? Well, that clearly indicates the disability under the American Disability Act that is prohibited from or shielded from inquiry. Well, that would be correct, but that's not prohibited inquiry for an employee. In other words, it would be perfectly... It would be perfectly legitimate under these acts for the doctor to respond, he's had a flare-up of AIDS, which is a disability in which we indeed reveal his disability. Even though the statute says that nothing shall make no inquiries of any employee as to whether an individual with a disability or the nature of severity of that disability. And, of course, it goes on to say unless such an examination or inquiry is shown to be job-related and consistent with business necessity. And I suppose that just a simple inquiry would be business-related. I mean, Judge, the EOC guidance says that we're entitled to ask an employee why he is seeking to use medical leave. I mean, that's an appropriate request. The fact that it elicits a response that happens to be a disability doesn't mean that it's an improper inquiry in the employment setting. So that fact that it revealed that, yes, in fact, he is disabled doesn't mean that to say, why are you not coming to work is an inappropriate inquiry. There's not going to be a case that says that's correct. I'm not going to tell you because I've got a disability and you might find out about it. Well, that's in a public safety setting. That would be an absurd response from an employee. Do you require the same thing of your firemen? They have a different policy. Why would you have a different policy for the firemen? Because they're not in the same setting and interacting with the public like police officers are. It's just a different job. It's a different set of rules and regulations.  and doesn't require the level of scrutiny, perhaps, that police officers do. It's just different. They don't have to be as physically fit or what? They probably aren't physical. I mean, they have their own set of physical fitness requirements. They've got to be able to carry hoses and things like that differently than police officers do have to be able to. They have a different PT test. The nature of absenteeism, I mean, is the... Absenteeism is found to a great extent in police departments than it is in the fire departments. It is. Because fire departments, they come in, they sit all day. Somebody has a fire. It's shift work versus hourly work. It's different. And that's what our point was. You can't go say, well, the Department of Water and Sewage people may have different rules and regulations that don't apply. It's not the point of a court to be getting in the middle of that at this point. Obviously, there has to be a distinction there. It's not an equal protection claim to say that different departments within a community government are treated differently. But back to the ADA issues. The point that I was trying to make is that the Rehab Act is rarely used in these settings because of that causation. Now, it's used in discrimination claims as to treatment. But this medical inquiry, how can you say that the sole reason you inquire of why you aren't at work is to discriminate? And that's what makes the plausibility a problem. You know, the only thing is, is that the only thing you're asking? If it is, that's one thing. But if you read the form to be broader than that, then it might be something else. It could be, Judge. And the form says if you don't have to use this form, you can have your physician write down what the reason is for your absence, what is your diagnosis, are you able to perform the job, and is it something that's intermittent so that we have to plan on substitutes and things like that. Those are the four things that... What kind of relief is she seeking? Is the plaintiff seeking injunctive relief here to eliminate the form? That's part of it. And damages claims and a whole wealth of things that I couldn't really relate to you too quickly. It's a lot of different details. Relative to the form, yeah, there is an injunctive relief claim in there saying that this form violates now the Rehab Act, and therefore it should be reformed, I guess, to comply with the Rehab Act. It's altogether possible. I mean, we could take a look at the form, and the form itself would be a violation of the Rehab Act if followed specifically and to the extent that it appears on the face. And if required. That could be. It's 12B6 motion, the policy was referenced in the complaint, so there's no dispute as to what that document says. In this setting, we're evaluating whether there's a factual issue for trial as to whether or not, or to proceed, or can you make that determination as a matter of law. It's something that the district judge did and found. There was one pregnant officer that had more or less an applied claim, didn't she? That's what it seemed. It was very vague. But that would be the only one with an applied claim, which was, I'm pregnant and I may have to return and not get my old job back, I think was what her claim was. And I may be assigned to the HR department, which I think those claims have been abandoned because they weren't briefed. But that's the only specific individual who made such an applied claim. In terms of opposing, you filed a motion to dismiss. So in connection with the motion to dismiss, that did not address business necessity at all, did it? That's correct. If the court found that there was, under the Rehab Act, that exhaustion wasn't required on these other issues that were led to that, and that under the Rehab Act it's plausible to say that that inquiry is solely on the basis of disability, then the E would go back and that would be the issue. Can you articulate a business necessity for that? We maintain for all the claims dismissal is appropriate, and that claim as well, because it's under the Rehab Act. There's still an ADA claim out there, I'm sure, that they could assert. There's still the state law claims that they, you know, a lot of the claims . . . ADA claim that would have been exhausted, you mean, because that's the failure of the ADA claim, is it? Right. That's why the judge dismissed that one without prejudice, along with . . . I mean, the claims are before us under the motion to dismiss. I mean, not all of them.  Everything, but where there's a failure to exhaust, then the dismissal at 12B6 is without prejudice. They just haven't taken advantage of that opportunity. Then they would proceed with an ADA claim. They wouldn't be saddled with this solely causation issue that are in Rehab Act cases. The judge also dismissed without prejudice the state law claims. Well, now, again, maybe I missed it, but what is the implication of solely by reason of disability, in terms of the claim that the plaintiff has, from your point of view, how does that affect this claim as opposed to one that was filed under the ADA, if one could have been exhausted? That causation element is not part of the ADA, but is . . . What is the causation element, though? How do you apply the causation element to this attack on the inquiries that you're making in your sick policy? Under the ADA, it could be, does this tend to disclose a disability? Under the Rehab Act, it's going to be, is that inquiry solely for purposes of discrimination, not does it tend to lead to the disclosure of information that . . . It's a different standard. Well, I mean, really, I mean, if you show business necessity, then that's all you're saying under the ADA. Under the ADA, if you have business necessity in defense, you have sailed into a safe harbor, and here if you use the word by solely reason of disability for the same purpose, show business necessity, it's not solely for the purpose of disability. We would have another, I mean, it would go to, there would be a business necessity as to whether, I mean, if it stated a claim under the Rehab Act and included that heightened causation issue, then we would come back and have the same analysis of whether there's a business necessity or not. And our point is, you didn't exhaust the ADA claim, therefore you're settled with that. And then . . . Okay, I think we have your case unless you've got something else to say, to address. That's it. Thank you, Judge. Yes, sir. Thank you. And now, Ms. Breedlove, we'll hear from you, a rebuttal of you, on the challenge, some of the things that have been said here. Thank you, Your Honor. Briefly, the form that the counsel talked about and wants to, he only read you the first part of it, about what the officer's obligations are. The authorization says, I authorize and request any and all of my physicians and hospitals to furnish all necessary information requested by the department, and hereby acknowledge that, subject to disciplinary action, all information provided is true and correct. It is not limited to what they called in sick for, what they were absent for. And therein lies the problem, and therein is why there is no reason for you to need all that, except unless you're looking for something else. And we are here on a motion for dismiss as opposed to an MSJ. What would we do from your point of view? Would we rewrite these policies ourselves to make them conform to ADA requirements, or would we send that back to the district court? I think this should be sent back to the district court so that we can have discovery and let's find out why is the city doing this. It's not a problem. Well, it's not an issue of prolonging, Your Honor. I think it's an issue of it's improper. You are delving into officers' medical history, and although the ADA-1 claim requires exhaustion, ADA-2 does not require exhaustion. It incorporates all the same issues about male inquiries. No medical inquiries. And the 11th Circuit has said that that— I understand this case is a mess. Yes, sir, Your Honor. And we didn't create that. The city did by trying to force these off— The mess has been because they've been all over the map. You have, to a large extent. I mean, is your main argument focused on this form and what you have to disclose? It is what you have to disclose and what they are talking about. Even though this information on this form is being left laid around for anybody to look at, lieutenants are talking about it, about your health care in front of other people who have no business knowing about it, that is my issue with that. And then coming and knocking on my door when I'm homesick to make sure I'm there? Not because you think I've abused the system, just because we think we can. That's the problem. And you're not doing that to your firefighters who, when they miss a day, they've missed three shifts. You've got an equal protection kind of sort of— That is definitely an equal protection claim, I think, Your Honor. I think they are similar. You develop this as an equal protection claim? For the confining police officers to their house? Yes, sir, I do. Is that a cause of action in your suit? Yes, sir. It is a cause of action in my suit, and it was just dismissed and we're not given an opportunity to reallege, to reamend the petition to further that out. The issue is you have firefighters and police officers are safety type officers. Firefighters are—every firefighter in the Shreveport Fire Department is an EMT. A large portion of them are paramedics, so they have multiple contacts with the public. And the legal question posed was can we hypothesize any rational basis upon which those differences may be said? That's the only standard you've got. The hypothesis is the issue, Your Honor— Can we imagine any reason why firefighters and police departments might be treated differently? I personally, as far as my clients, I don't think there's any reason, but I also think that's an issue for summary judgment, not an issue for pleadings. Because all the cases cited by the defendant were decided on summary judgment. My point is on those constitutional claims, they don't help your other statutory claims at all because they're just not closed. There's no way that you can violate the Equal Protection Clause. That hurts the rest of your claims. You've got some claims to talk about under the statute. Zero in on those and don't clutter them up with all this substitute due process in the clouds arguments. They're not going to fly. They don't get off the ground. So I appreciate your enthusiasm for your officers. Thank you, Your Honor. Okay, well, we'll do the best we can.